JAMES FRANKLIN WEATHERLY V. STATE

No. 28,521. November 28, 1956.

*Crouch* and *Pringle,* by *Doug Crouch,* Fort Worth, for appellant.

*Howard M. Fender,* Criminal District Attorney, *Conard Florence,* Assistant Criminal District Attorney, Fort Worth, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The conviction is for burglary, with a prior conviction of an offense of like character alleged for the purpose of enhancement; the punishment, 12 years in the penitentiary.

The state's evidence shows that the appellant was arrested while seated in his automobile, parked across the street from a building occupied by the Hancock Paint Company at the intersection of Lipscomb and Magnolia Streets in the city of Fort Worth.

The record reflects that the arrest was made around 1:30 A.M. after the appellant and his companions had been under surveillance by city detectives Baker, Hopkins, and Matlock, each of whom testified at the trial upon being called as witnesses by the state.

According to their testimony, it is shown that around 8:00 o'clock P.M. Detectives Baker and Hopkins located an automobile for which they were looking, parked at a place known as "Stella's Place," on East Belknap Street. After they had gone for Lieutenant Matlock and returned, appellant and a companion, Marvin Niles Stubblefield, came out of the place, got in the car, and appellant then drove to a place known as "Ruck's Drive-In," and the two got out of the car and went in. The three detectives having followed the automobile, went in the place whereupon Lieutenant Matlock engaged the appellant in conversation. After the detectives had come out of the place, the ap-

pellant and his companion, Stubblefield, came out, got in the car, and were again followed by the officers. Appellant stopped the car on Main Street. After the officers had gone to the police station and changed automobiles, they returned and observed three men walk across the street and get in the car. The car was then driven to Travis Street and stopped, and the officers who were following behind observed two men make several trips walking from the car to a house and back. The car again started up and was followed by the officers until it pulled in on a parking lot at a hamburger stand. The officers testified that when the car stopped on the parking lot they pulled into an old filling station about a block away and, from this vantage point, observed a man get out of appellant's automobile, walk to the door of the paint store, and, after pushing on the door, return to the automobile; that, after they observed two men then go from the automobile and enter the building through the door, Lt. Matlock proceeded to the car and arrested appellant seated alone in the car; and, according to Lt. Matlock, at such time, the motor of the car was running and appellant was looking back toward the store building. Detectives Baker and Hopkins and other officers then went in the building and, upon entering, apprehended two men on the inside who were identified as Marvin Niles Stubblefield and Harry Huggins, and also discovered the contents of the knob of the safe lying on the floor and a sledge hammer and bar nearby.

The state made proof of appellant's prior conviction as alleged in the indictment.

As a witness in his own behalf, appellant testified that, on the night in question, he was taking his companions home, and that the reason he stopped was because Stubblefield told him that was where he lived. He further testified that he did not have any indication that there was to be a burglary that night.

Appellant further offered testimony in support of his contention that because of certain shelves and wall paper displays in the paint store, it was impossible for the officers looking from the filling station through the plate glass windows of the store to see the door which they testified was entered and the men going to and from appellant's automobile.

The court, in his charge, fully instructed the jury on the law of principals.

The jury chose to accept the state's testimony and rejected

that of the appellant, and we find the evidence sufficient to support their verdict.

By Bills of Exception Nos. 1 and 2 appellant complains of certain jury argument made by state's counsel wherein counsel, in his opening argument, stated: "If juries will convict the guilty, maybe the newspapers will stop referring to Fort Worth as 'Little Chicago.' "; and, in his closing argument, referred to the appellant as a "dangerous criminal." It is shown by the bills that the court sustained appellant's objection to the argument, instruced the jury not to consider the same, and, after overruling appellant's motion for mistrial, again instructed the jury not to consider such argument.

It is the rule that injury from improper remarks of counsel is ordinarily obviated when withdrawn by the court and the jury instructed to disregard same. It is only when the argument in such cases is obviously prejudicial that a reversal of the conviction is called for. 42 Tex. Jur. No. 184, P. 239; Woodland v. State, 148 Tex. Cr. R. 100, 184 S.W. 2d 625.

In determining whether the effect of an improper argument is of such a nature as to be obviously hurtful and prejudicial the facts and surroundings of the case must be looked to, and such is the rule where the objectionable statement or argument does not violate the mandatory provisions of a statute. 42 Tex. Jur., No. 186, P. 241; Arcos v. State, 120 Tex. Cr. R. 315, 29 S.W. 2d 395; and Bushiey v. State, 128 Tex. Cr. R. 1, 79 S.W. 2d 124.

We have concluded that the argument was not so obviously prejudicial that its effect upon the jury could not be removed by the court's instruction to disregard the same.

We are unable to agree with appellant's that the reference to Fort Worth as "Little Chicago" conveyed to the jury a serious undertone concerning Chicago racketeers in Fort Worth. We may take judicial notice that Chicago is one of our major cities, but not that it is a city of racketeers. Nor may we view the statement in the light of appellant's contention that Harry Huggins, who was implicated with him, was a notorious local underworld character who had been implicated in a notorious murder case, and had received newspaper publicity, because the record does not bear out such facts.

We are also unable to agree with appellant's contention that

state's counsel's reference to him as a "dangerous criminal" constituted reversible error because it was an attempt to place his reputation in issue when it had not been placed in issue. It is shown by the court's qualification to Bill of Exception No. 2 that such reference by state's counsel was made after argument by appellant's counsel to the jury concerning the appellant being a law-abiding citizen for a long number of years since his prior conviction. In view of the court's qualification and the instruction of the court to the jury not to consider the argument, reversible error is not shown by this bill.

Bill of Exception No. 3 presents appellant's contention that state's counsel committed reversible error in propounding to him, on cross-examination, the following question: "You don't know who it was that might have informed the police there was to be a burglary?"

The record reflects that, before the question was answered, the court sustained appellant's objection thereto, instructed the jury not to consider the same, and then overruled appellant's motion for mistrial.

In view of the court's instruction to the jury not to consider the question, we perceive no reversible error in the mere asking of the same as the record does not bear out appllant's contention that the court had previously ruled the testimony sought to be elicited inadmissible and that the question was asked by state's counsel in bad faith.

The judgment is affirmed.

Opinion approved by the Court.

DAVIDSON, Judge, dissenting.

The holding of my brethren that the argument of state's counsel does not require a reversal of the conviction constitutes a license to all prosecuting attorneys to say, in argument, anything they please, so long as what is said violates no statutory mandate. I say this because, by such holding, no penalty is affixed to the making of any argument, for when the trial court instructs the jury not to consider the improper argument all is forgotten and state's counsel is a liberty to make the same error over and over again.

If the argument of state's counsel is such that it ought not

to be permitted to remain with and to be considered by the jury, it ought not to have been made in the first instance. The fact that the argument was withdrawn shows that it was wrong and should not have been made.

That the argument of state's counsel in the instant case was wrong and should not have been made is apparent.

So then, there is no escape from the conclusion that appellant has not been accorded a fair trial in accordance with law.

My brethren do not attempt to justify the argument, but say that appellant was not hurt or injured thereby because the jury was instructed not to consider it.

Let us examine this record in the light of that conclusion:

Peace officers of the city of Fort Worth, upon whose testimony this conviction rests, had information that a burglary was to be committed and that the automobile appellant was driving was to be used in the burglary. In view of that information the officers kept the automobile and the suspected parties under surveillance, standing by and watching the parked automobile and the parties going to and from the automobile to the house —all of which acts and conduct on the part of the parties showed that the suspected burglary was about to be and was in the process of being consummated.

Not until the knob had been knocked from the safe in the building and the burglary had been effected did the officers take any action relative to the burglary.

No effort was made to prevent or suppress the commission of the burglary which the officers had every reason to believe was to be committed.

Had the officers used the least effort, they could have prevented the burglary, suppressed the crime, and prevented the injury to the owner's property inside the building. The conduct of the officers leaves but one conclusion—which is that they preferred to permit the completed offense to occur rather than to prevent it from occurring.

Does the law place upon peace officers the duty to suppress and prevent the commission of crime as well as of detection after a crime has been committed?

Arts. 414 and 415, P. C., provide that if any officer wilfully or negligently fails to perform any duty imposed upon him by the Penal Code or Code of Criminal Procedure he shall be punished. The term "officer," as there used, includes peace officers. Art. 50, C. C. P. All city policemen are peace officers. Art. 36, C. C. P.

It becomes material, then, to ascertain what duties are imposed upon peace officers by the Code of Criminal Procedure:

Under Art. 37, C. C. P., a peace officer is under the duty of preserving the peace and to interfere, without warrant, to prevent or suppress crime. By Art. 77, C. C. P., every peace officer is under the duty to prevent an offense being committed against the property of another in his presence or within his view.

That the officers, here, were guilty of violating the statutes mentioned appears to me to be obvious. They knew that an offense was about to be committed and they made no effort to prevent the commission thereof. As a result of that failure to do their duty, the offense of burglary was committed and the property of another was damaged. Had the offenders killed the owner of the burglarized premises instead of knocking the knob from the safe, the blood of that deceased would have been upon their hands because they could have prevented that killing and were under the duty of so doing.

The question naturally arises as to what effect the failure of the officers to do their duty has upon the issue for determination here.

Ordinarily, the mere fact that one knows that an offense is about to be committed and does nothing to prevent it does not make that person an accomplice to the offense committed. That rule, however, is applied where there is no duty imposed upon the person to prevent or suppress the crime.

Where, as here, officers are under the duty of preventing crime and do not do so and violate the law in not so doing, an entirely different question is presented.

Whether the officers here were accomplice witnesses presents a new and difficult problem. I am not, at this time, called upon to say—but I do know—that the failure of the officers to do their duty, which failure resulted in violating the law, war-

rants close scrutiny of their testimony and of their motives in the case. Of necessity, such facts must be considered in order to determine whether the argument of state's counsel requires a reversal of the conviction.

According to the bill of exception, state's counsel said in his opening argument to the jury:

" 'If Juries will convict the guilty, maybe the newspapers will stop referring to Fort Worth as 'Little Chicago.' "

The first implication in this argument is that juries have not been convicting the guilty, as a result of which the newspapers have referred to Fort Worth as "Little Chicago." The second implication is that if the jury would convict appellant, who the state charged was guilty, probably the newspapers would stop referring to Fort Worth as "Little Chicago." The third implication is that the newspapers had referred, in fact, to Fort Worth as "Little Chicago" because of the verdicts of juries.

The arguments and the implications thereunder were clearly beyond, outside of, and not warranted by the evidence in the case, and constituted the giving of unsworn testimony by state's counsel.

It is little wonder that the trial court promptly sustained appellant's objection to the argument and instructed the jury to disregard it.

In the other and closing argument which is complained of, counsel for the state referred to the appellant as a "dangerous criminal."

Counsel could not have more effectively testified before the jury than he did in that statement, which was unsworn testimony on his part, that appellant was a dangerous criminal. There were no conditions made to that statement by counsel. Nowhere did he say that such was a reasonable deduction from the evidence or an expression of his opinion upon the evidence. The whole effect of this unqualified statement by counsel was that if the jury believed the defensive theory and acquitted the appellant they would be setting free a "dangerous criminal."

There was before the jury evidence that appellant had been once before convicted of a felony. As to that conviction the

trial court was very careful to tell the jury that they could not consider that prior conviction as evidence of appellant's guilt.

Notwithstanding such a charge, the argument that appellant was a "dangerous criminal" had the effect of utilizing before the jury the prior conviction as evidence of appellant's guilt.

Again, there is little wonder that the trial court sustained the objection to that argument and instructed the jury not to consider it!

Counsel for the state ought not, by way of argument, place before the jury facts, circumstances, and conditions which are harmful and hurtful to the accused which could not be lawfully proven or placed before the jury during the trial of the case. Such statement is, to my mind, not only legally sound but is a basic concept of justice and of the right as distinguished from the wrong. It is automatic. That which cannot be done directly cannot be done indirectly.

When the state transgresses the bounds of legitimate argument, some punishment ought to be meted out. Withdrawing the argument from the consideration of the jury is no punishment at all, let alone adequate. There is nothing in such withdrawal that would tend, in the least, to prevent a recurrence of the same or similar argument. If there be no punishment fixed for the violation of a rule, there is nothing to command observance of the rule.

So long as counsel for the state may transcend the bounds of legitimate argument, without fear of punishment, just that long will they continue to so do.

Here, the trial court and also this court admit that the arguments made were wrong and should not have been made, but no punishment is inflicted therefor.

Notwithstanding all these facts, my brethren say that appellant was not injured by the inflammatory and unwarranted arguments of state's counsel. It is only by the rankest sort of speculation that such a conclusion may be arrived at, for appellant received the maximum penalty assessable to the crime of burglary—and this in the face of evidence which, if believed, showed his innocence.

I respectfully submit that this appellant was not accorded a fair and impartial trial under the law.

I dissent from the affirmance of this case.